**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| JAMES E. McGILL, JR., | : | |
| Petitioner, | : | |
| | | Case No. 3:03cv00143 |
| vs. | : | |
| | | District Judge Walter Herbert Rice |
| PAT HURLEY, Warden, | : | Magistrate Judge Sharon L. Ovington |
| Ross Correctional Institution, | | |
| | : | |
| Respondent. | | |
| | : | |

**REPORT AND RECOMMENDATION[1]**

## I.  INTRODUCTION

After a mistrial in state court involving numerous criminal charges against James E. McGill, Jr., a second jury trial was held in the Greene County, Ohio Court of Common Pleas. The second jury found McGill guilty of four counts of rape and four counts of gross sexual imposition.  During McGill's unsuccessful direct appeal, the Ohio Court of Appeals explained that McGill committed these criminal acts against his step son and his step daughter at various times when both victims were under age thirteen.[2]

McGill is currently incarcerated in the Ross Correctional Institution in Chillicothe, Ohio where he is serving the following sentences: a definite period of life imprisonment for each rape conviction to be served concurrently and a two-year term of imprisonment for each gross-sexual-

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

[2] (Doc. #5, Exhibit G at 1-3).

imposition conviction to be served concurrently.  The trial court also ordered McGill to serve his sentences for rape consecutive to his sentences for gross sexual imposition.  He was also found to be a sexual predator.[3]

Having unsuccessfully pursued direct and collateral appeals in the Ohio courts and having unsuccessfully sought a Writ of Certiorari in the U.S. Supreme Court, McGill brings the present case *pro se* seeking a Writ of Habeas Corpus pursuant to 28 U.S.C. §2254.  This case is before the Court upon McGill's Petition (Doc. #2), Respondent's Answer (Doc. #5), and the record as a whole.

## II. PROCEDURAL HISTORY

After his convictions and sentencing, McGill's trial attorney filed a timely direct appeal in the Ohio Court of Appeals.  The Court of Appeals addressed and rejected on the merits each of McGill's eleven Assignments of Error.  (Doc. #5, Exh. G).  McGill's attorney then filed a timely Memorandum in Support of Jurisdiction in the Ohio Supreme Court.  (Doc. #5, Exh. H). On April 11, 2001, the Ohio Supreme Court denied McGill leave to appeal.  (Doc. #5, Exh. J).

On March 6, 2001, McGill's attorney filed in the Ohio Court of Appeals an Application To Reopen Appeal Pursuant to Ohio Rule Appellate Procedure 26(B).  This Application raised the following arguments:

    I.    Appellate counsel failed to assign error to the improper admission of evidence concerning the theory of 'child sexual abuse accommodation syndrome.'

    II.   Appellate counsel failed to assign error to the prejudicial remarks during the prosecutor's closing arguments.

---

[3] (Doc. #5, Exhs. F, G at 4).

    III.    Appellate counsel failed to assign error to the failure of trial counsel to object to the prejudicial remarks of the prosecutor during closing arguments.

    IV.    Appellate counsel failed to assign error to the failure of trial counsel to preserve a pre-trial ruling by the trial court which precluded to Appellant the availability of a witness critical to impeachment of the Complainant.

(Doc. #5, Exh. K at i). The Ohio Court of Appeal rejected each of these arguments on the merits. (Doc. #5, Exh. M).

McGill's attorney then filed a timely Memorandum in Support of Jurisdiction in the Ohio Supreme Court raising three Propositions of Law:

    I.    Expert testimony regarding the so-called child sexual abuse accommodation syndrome is improper where the child-victim testified.

    II.    Evidence that is 'relevant' cannot be barred merely because it was not raised in an earlier proceeding.

    III.    In a criminal child sexual-abuse case which turns on the credibility of the witnesses, multiple acts of prosecutorial misconduct in the closing argument warrant reversal of the conviction.

(Doc. #5, Exh. N). On November 21, 2001, the Ohio Supreme Court dismissed McGill's appeal. (Doc. #5, Exh. P).

McGill's final effort to obtain relief from his convictions and sentences prior to filing the instant case involved an unsuccessful Petition for a Writ of Certiorari in the U.S. Supreme Court. *McGill v. Ohio*, 535 U.S. 1043 (2002). The Supreme Court denied certiorari on April 29, 2002. *Id*.

### III. McGILL'S PETITION

On April 24, 2003, McGill filed his *pro se* federal habeas corpus Petition, raising two grounds for relief:

3

|  |  |
|---|---|
| <u>Ground One</u>: | Petitioner denied right to fair trial where state's witness testified as to Child Sexual Abuse Accommodation Syndrome. |
| <u>Supporting Facts</u>: | State introduced at trial evidence of Child Sexual Abuse Accommodation Syndrome in attempt to explain children's delay in reporting abuse. |
| <u>Ground Two</u>: | Petitioner denied effective assistance of counsel where counsel failed to raise as error introduction of Child Sexual Abuse Accommodation Syndrome testimony. |
| <u>Supporting Facts</u>: | Appellate counsel failed to raise as error the introduction of Child Sexual Abuse Accommodation Syndrome on direct appeal. |

(Doc. #2 at 4).

## IV.   ANALYSIS

### A.   <u>Statute of Limitations</u>

Respondent contends that McGill's Petition is barred by the applicable one-year statute of limitations. This contention lacks merit.

The Antiterrorism and Effective Death Penalty Act of 1996 ("the AEDPA") requires a state prisoner seeking to bring a federal habeas corpus case to file his or her Petition within one year from the conclusion of his or her state appeal. 28 U.S.C. §2244(d)(1). This one-year period begins to run from the latest of the following:

(A)   the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B)   the date on which the impediment to filing an application created by State action in violation of the Constitution ... is removed;

(C)   the date on which the constitutional right asserted was initially recognized by the Supreme Court and made retroactively applicable...;

(D)   the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. §2244(d)(1).

    The AEDPA permits tolling of its one-year statute of limitations as follows:

> The time during which a properly filed application for State postconviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. §2244(d)(2).

    McGill's direct appeal concluded when the Ohio Supreme Court dismissed his appeal on April 11, 2001. (Doc. #5, Exh. J). Respondent correctly acknowledges, *see* Doc. #5 at 10, that the statute of limitations did not begin to run on that day, because McGill had ninety days to file a Petition for Writ of Certiorari in the U.S. Supreme Court. *See Penry v. Lynaugh*, 492 U.S. 302, 314 (1989).

    Before this ninety-day period ended, McGill filed his Rule 26(B) Application in the Ohio Court of Appeals. (Doc. #5, Exh. K). This Application tolled the running of the statute of limitations. *See Abela v. Martin*, 348 F.3d 164, 166 (6th Cir. 2004). Tolling remained in effect throughout McGill's Rule 26(B) litigation. *See Abela*, 348 F.3d at 166. This included the time his Rule 26(B) Application remained pending in the Ohio Court of Appeals and the time his Memorandum remained pending in the Ohio Supreme Court. *See Abela*, 348 F.3d at 166. This tolling further included the time during McGill's Petition for a Writ of Certiorari remained pending in the U.S. Supreme Court. *See Abela*, 348 F.3d at 172-73.

    The Supreme Court denied certiorari on April 29, 2002, *McGill*, 535 U.S. 1043, and on this day, the AEDPA's statute of limitations started to run. *See Abela*, 348 F.3d at 172-73.

    McGill filed his present habeas Petition on April 24, 2003 several days before the one-

5

year statute of limitations ended. McGill's Petition is therefore timely.

Respondent contends that the statute of limitations began to run much earlier on November 21, 2001 when McGill's Rule 26(B) litigation ended in the Ohio Supreme Court. Respondent reasons, "The Sixth Circuit, as well as every other federal circuit in the country, has ruled that an action which tolls the limitation period does not toll the extra 90 days during which the petitioner could have filed a petition for *certiorari* in the United States Supreme Court. *Isham v. Randle*, 226 F.3d 691 (6th Cir. 2000); *Payton v. Brigano*, 256 F.3d 405 (6th Cir. 2001)." (Doc. #5 at 10-11). This contention was rejected in *Abela v. Martin*, which was decided after Respondent filed an Answer in the present case. In *Abela*, an *en banc* panel of the United States Court of Appeals for the Sixth Circuit held, "under section 2244(d)(2), the statute of limitations is tolled from the filing of an application for state-postconviction relief until the conclusion of the time for seeking Supreme Court review of the state's final judgment on that application independent of whether the petitioner actually petitions the Supreme Court to review the case." 348 F.3d at 172-73. Thus, contrary to Respondent's contention, the AEDPA's statute of limitations remained tolled until the ninety-day period ended for McGill to seek review of his Rule 26(B) Application in the U.S. Supreme Court. *Id.*; *see also DiCenzi v. Rose*, 419 F.3d 493, 497 (6th Cir. 2005).

Accordingly, McGill's habeas Petition is not time barred.

### B. Procedural Default

Respondent contends that McGill has waived his first ground for relief for purposes of federal habeas review by committing a procedural default in state court. Respondent identifies this procedural default as McGill's failure to raise his first ground for relief in the Ohio appellate

courts on his direct appeal.

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies..., thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004)(internal citations and punctuation omitted). "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court..., alerting that court to the federal nature of the claim." *Reese*, 541 U.S. at 29 (citations omitted).

To fairly present federal claims in the Ohio courts, a petitioner must raise the substance of them in direct or delayed appeals to the Ohio Court of Appeals and the Ohio Supreme Court. *Clinkscale v. Carter*, 375 F.3d 430, 437 (6th Cir. 2004); *see also Fields v. Bagley*, 275 F.3d 478, 482-83 (6th Cir. 2001). In some circumstances, a petitioner must bring certain claims in a petition for post-conviction relief under Ohio Rev. Code §2953.21 or in an Application to Reopen Appeal under Ohio R. App. P. 26(B). *See Lopez v. Wilson*, 426 F.3d 339, 342-43 (6th Cir. 2005)(*en banc*); *see also Manning v. Alexander*, 912 F.2d 878, 881-83 (6th Cir. 1990); *Morgan v. Eads*, 104 Ohio St.3d 142, 143-44 (2004).

If a federal habeas petitioner fails to fairly present his federal claims to the state courts and if a state procedural rule bars the petitioner from receiving in state court a merits review of the federal claims, then the petitioner's procedural default may result in a waiver of the claims for purposes of federal habeas corpus review. *See Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004); *see also Buell v. Mitchell*, 274 F.3d 337, 349 (6th Cir. 2001).

One way a petitioner may procedurally default is by failing to raise a federal constitutional claim during his direct appeal in the Ohio Court of Appeals and the Ohio Supreme

Court. This procedural default occurs because the Ohio courts apply the doctrine of *res judicata* to bar review of claims appearing on the trial record that were not raised on direct appeal in the Ohio Court of Appeals and the Ohio Supreme Court. *See Williams v. Bagley*, 380 F.3d 932, 967 (6th 2004). As applied by the Ohio courts, "*res judicata* is an adequate and independent state ground for barring habeas review of constitutional claims." *Id*

Only two limited situations excuse a procedural default: (1) if a petitioner shows cause and prejudice or (2) if the petitioner shows a fundamental miscarriage of justice will result from the failure to consider the merits of the claims. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Monzo v. Edwards*, 281 F.3d 568, 575 (6th Cir. 2002).

McGill's first ground for relief in his habeas Petition asserts that he was denied a fair trial when a state's witness testified about Child Sexual Abuse Syndrome. (Doc. #2 at 4). A review of the Ohio Court of Appeals' opinion on McGill's direct appeal reveals that he did not raise this fair-trial claim. *See* Doc. #5, Exh. G. A review of McGill's Memorandum in Support of Jurisdiction reveals that McGill did not raise this fair-trial claim in the Ohio Supreme Court. *See* Doc. #5, Exh. H. Consequently, McGill did not raise his fair-trial claim when directly appealing his convictions and sentences in the Ohio courts.

McGill did, however, raise this claim in his Rule 26(B) Application in the Ohio Court of Appeals as a basis for his contention that his appellate counsel provided constitutionally ineffective assistance by failing to assign as error on direct appeal the improper admission of evidence concerning the theory of child sexual abuse accommodation syndrome. (Doc. #5, Exh. K). Respondent contends that by raising it in this manner, as a ground for ineffective assistance

8

of appellate counsel, McGill committed a procedural default. This is correct. *See Lott v. Coyle*, 261 F.3d 594, 612 (6th Cir. 2001). Although the Ohio Court of Appeals reviewed McGill's claim of ineffective assistance of appellate counsel and specifically rejected his reliance on the Child Sexual Abuse Accommodation Syndrome ("CSAAS") without enforcing, or even mentioning, any state procedural rule, this does not assist McGill in avoiding his procedural default of his CSAAS fair-trial claim. The Sixth Circuit Court of Appeals explains:

> that a court [of appeals], in reviewing a claim of ineffective assistance of counsel, looks to the merits of the alleged error ... is not dispositive of the question whether a procedurally defaulted claim has been resurrected. As the district court correctly observed: '[T]he fact that the state courts engaged in that analysis, as they must under *Strickland,* does not, however, serve as evidence that those courts *excused* the procedural default.' To hold otherwise would eviscerate the continued vitality of the procedural default rule; every procedural default could be avoided, and federal court merits review guaranteed, by claims that every act giving rise to every procedural default was the result of constitutionally ineffective counsel.

*Lott*, 261 F.3d at 612.

McGill did not file a Traverse or a Memorandum in Opposition to Respondent's Answer in the present case. He has therefore not attempted to show cause and prejudice or that a fundamental miscarriage of justice will occur if his CSAAS fair-trial claim is not heard on the merits. He has therefore not demonstrated that his procedural defaulted must be excused.

In addition, as the following section reveals, even if McGill's first ground for relief is not waived by procedural default, the Ohio Court of Appeals' rejection of his CSAAS argument was not unreasonable. Thus, either way – waived or on the merits – McGill's first ground for relief fails.

       **C.**      **McGill's Grounds For Relief Lack Merit**

As previously stated, *surpra*, p. 4, McGill seeks habeas relief first because he was denied a fair trial due to the admission of testimony about CSAAS, and second because his appellate counsel provided constitutionally ineffective assistance due to his failure to raise the CSAAS theory on his direct appeal in the Ohio Court of Appeals.

The Ohio Court of Appeals began by describing the standards of *Strickland v. Washington*, 466 U.S. 668 (1984) as follows: "To demonstrate ineffective assistance of appellate counsel, McGill must proved that his appellate counsel was deficient for failing to raise the issues he now presents and that there was a reasonable probability of success had appellate counsel presented those claims on appeal." (Doc. #5, Exh. M at 2). The Ohio Court of Appeals then rejected McGill's claim of ineffective assistance of appellate counsel and his reliance on a CSAAS theory, explaining:

> [McGill] argues that Ohio case law prohibits the admission of expert testimony regarding that theory because such testimony improperly bolsters the credibility of child witnesses.
>
> CSAAS is a theory that offers an explanation for why child victims often fail to promptly report their sexual abuse. *State v. Smith* (1992), 84 Ohio App.3d 647, 657.... In *State v. Hunter* (Feb. 12, 1991), Montgomery App. No. 11853, unreported, our court approved the use of expert testimony regarding CSAAS after finding that, in that case, the expert's testimony on that topic had been relevant to the credibility of the complaining child witness. We distinguished *Hunter* in *State v. Smith* after concluding that in *Smith*, the expert's testimony on CSAAS had not been relevant to the credibility of the children's testimonies, but instead, had been offered for the purpose of proving, by inference, that the defendant had committed the charged offense. *Smith*, 84 Ohio App.3d at 657....
>
> We believe that, in McGill's case, the expert's testimony on CSAAS was offered to lend credibility to the child victims' testimonies. Throughout the case, defense counsel questioned the children's credibility by repeatedly pointing out that they had not reported the sexual abuse until approximately nine months after they had moved out of McGill's house and had stopped having contact with him. The expert's testimony explained to the jury why the children had not reported the abuse immediately after they had left McGill's reach.

10

>        Because the facts of this case reveal that the expert testimony about CSAAS was relevant to the credibility of the children, such testimony was properly admitted by the trial court.  Thus, McGill's appellate counsel was not deficient for failing to raise this argument.

(Doc. #5, Exh. M at 3-4).

The plain language of §2254 prohibits granting a Writ of Habeas Corpus based on a *de novo* review of state-court decisions.  *Price v. Vincent*, 538 U.S. 634, 639 (2003).  Instead, the AEDPA requires the federal courts to view state-court decisions "through the lens of §2254...." *Price*, 538 U.S. at 639.  A writ of habeas corpus may not issue under 2254 with respect to any claim adjudicated on the merits in state court unless the adjudication either:

>    1.    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>    2.    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  The phrases "contrary to" and "unreasonable application" have independent meanings:

>        A federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule different from the law set forth in ... [Supreme Court] cases, or if it decides a case differently that we have done on a set of materially indistinguishable facts.  The court may grant relief under the 'unreasonable application' clause if the state court correctly identifies the governing legal principle from ... [the Supreme Court's] decisions but unreasonably applies it to the facts of a particular case.  The focus on the latter inquiry is whether the state court's application of clearly established federal law is objectively unreasonable ... and an unreasonable application is different from an incorrect one.

*Bell v. Cone*, 535 U.S. 685, 694 (2002)(citation omitted); *see Doan v. Brigano*, 237 F.3d 722, 729 (6th Cir.2001).

"The Supreme Court has made clear that post-AEDPA claims of ineffective assistance of

11

counsel brought by habeas petitioners will succeed only in very limited circumstances.... For [the petitioner] to succeed..., he must do more than show that he would have satisfied *Strickland*'s test if his claim were being analyzed in the first instance, because under §2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied *Strickland* incorrectly. Rather, he must show that the ... [state] Court of Appeals applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Payne v. Bell* 418 F.3d 644, 665 (6th Cir. 2005).

"In order to succeed on a claim of ineffective assistance of appellate counsel, a petitioner must show errors so serious that counsel was scarcely functioning as counsel at all and that those errors undermined the reliability of the defendant's convictions." *McMeans v. Brigano*, 228 F.3d 674, 682 (6th Cir. 2000).

In McGill's case, the Ohio Court of Appeals correctly set forth the *Strickland v. Washington* standards, *see* Doc. #5, Exh. M at 2, and applied these standards in an objectively reasonable manner.

The Ohio Court of Appeals' decision did not apply *Strickland v. Washington* in an objectively unreasonable manner. Its analysis was instead based on a reasoned review of pertinent Ohio cases concerning CSAAS. Because these cases did not reveal any error in the admission of the CSAAS testimony during trial, appellate counsel's representation was not flawed by his decision not to raise a meritless CSAAS-based claim on McGill's direct appeal. Consequently, appellate counsel's performance was not constitutionally deficient. *See Howard v. Bouchard*, 405 F.3d 459, 485 (6th Cir. 2005)("failure to raise an issue on appeal is ineffective assistance only if there is a reasonable probability that inclusion of the issue would have changed

12

the result of the appeal."). Although McGill presumably argues otherwise, he has not presented any reason to conclude that the Ohio Court of Appeals' application of *Strickland v. Washington* was either incorrect or objectively unreasonable. *See* Doc. #2.

Accordingly, McGill's first and second grounds for relief lack merit.

## V.     CERTIFICATE OF APPEALABILITY

Before McGill may appeal a denial of his Petition, he must first obtain a certificate of appealability. 28 U.S.C. §2253(c)(1)(A). To obtain a certificate of appealability when a Petition is denied on the merits, the petitioner must make a substantial showing of the denial of a constitutional right. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). This is accomplished by showing that reasonable jurists could debate whether the Petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. *Slack*, 529 U.S. at 484 (quoting *Barefoot v. Estelle,* 463 U.S. 880, 893 (1983)).

If the District Court dismisses the Petition on procedural grounds without reaching the merits of the constitutional claims, the petitioner must show that jurists of reason would find it debatable whether the District Court is correct in its procedural ruling. *Slack*, 529 U.S. at 484. The procedural issue should be decided first so as to avoid unnecessary constitutional rulings. *Slack*, 529 U.S. at 485 (citing *Ashwander v. TVA*, 297 U.S. 288, 347 (1936)(Brandeis, J., concurring)).

In the instant case, the conclusions that McGill has waived his first ground for relief by his procedural default, and that his first and second ground for relief lack merit are not debatable by jurists of reason. McGill's Petition and contentions do not otherwise present issues adequate to deserve encouragement to proceed further.

13

Consequently, a certificate of appealability should not issue.

## IT IS THEREFORE RECOMMENDED THAT:

1. James E. McGill, Jr.'s, Petition for a Writ of Habeas Corpus (Doc. #2) be DENIED and DISMISSED;

2. A certificate of appealabilty under 28 U.S.C. §2253(c) not issue; and

3. The case be terminated on the docket of this Court.


November 15, 2005

                                                                                       s/ Sharon L. Ovington  
                                                                                         Sharon L. Ovington  
                                                                            United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(e), this period is extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within ten days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).